IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

COURTHOUSE NEWS SERVICE,

    Plaintiff,

v.

JEFF SHORBA, *in his official capacity as Minnesota State Court Administrator*; HEATHER KENDALL, *in her official capacity as the Judicial District Administrator for the Second Judicial District*; SARA GONSALVES*, in her official capacity as the Judicial District Administrator for the Fourth Judicial District*.

    Defendants.

Court Case No: 0:23-cv-2198

## COMPLAINT

Plaintiff, Courthouse News Services ("Courthouse News"), by and through its undersigned attorneys, alleges as follows against Defendants, Jeff Shorba, in his official capacity as Minnesota State Court Administrator ("Shorba" or "Administrator"), Heather Kendall, in her official capacity as the Judicial District Administrator for the Second Judicial District ("Kendall"), and Sara Gonsalves, in her official capacity as the Judicial District Administrator for the Fourth Judicial District ("Gonsalves") (collectively "Defendants").

## INTRODUCTION

1. State and federal courts across the country have historically made new civil lawsuits available to the press and public as the court received them. Eighth Circuit Judge Bobby Shepherd recently described this traditional access during oral arguments in *Courthouse News Serv. v. Gilmer et al.* (8th Cir. No. 21-2632), a case involving the same issues as here: "There was a time

1

when—and some in this room may remember it—when you took a pleading to the courthouse and the clerk stamped it physically and it went into different bins and it was available immediately."

2. Traditional access was the norm in Minnesota. Journalists and the public could review new complaints filed in Hennepin County District Court at the filing counter on the second floor of the Hennepin County Government Center and journalists could also review them up one floor in the docketing area, where the new complaints were stacked on a small cart. The same was also true in Ramsey County District Court, where journalists reviewed the new complaints behind the counter as they were received.

3. In the transition from paper filing to electronic filing ("e-filing"), federal courts and many state courts kept the tradition in place, making complaints available as they crossed the virtual intake counter. However, the Minnesota state courts, including Hennepin County District Court and Ramsey County District Court, did not.

4. Defendants now withhold the e-filed civil complaints until court staff have finished a series of administrative steps commonly referred to as "processing." As a result, all newly e-filed civil complaints are effectively sealed upon receipt, with access commonly withheld for one to three days after filing.

5. The First Amendment to the United States Constitution provides the press and public with a qualified right of access to civil complaints. Whether new civil complaints are paper-filed or e-filed, this right of access attaches *on receipt*, when a new filing is delivered to, or deposited with, the clerk.

6. Policies and practices that restrict access to the new civil complaints are subject to constitutional scrutiny, with Defendants bearing the burden of showing that such policies and

practices are essential to preserve an overriding governmental interest and narrowly tailored to serve that interest.

7. Courthouse News has a First Amendment right of access to new civil complaints filed with Minnesota state courts. Such access is fundamental and essential to accurate and fair news reporting of civil court actions, and thus, vital to the public's ability to monitor the activities of the judicial branch of government. Any unjustified delays in access result in unconstitutional restrictions of the press's and public's ability to perform that important role.

8. When a complaint is withheld, the news it contains grows stale. The public is left unaware that a civil action has commenced and that a litigant has invoked the power of the judicial branch of government. A delay of even one day means that by the time the complaint can be reported, the news of its filing has already been overtaken by the next day's news and is less likely to ever come to the public's attention.

9. The restrictions on, and resultant delays in, access experienced by Courthouse News in Hennepin and Ramsey Counties, and throughout Minnesota courts, are the result of Defendants' policies and practices barring access to new e-filed complaints until after they have been administratively processed by court staff. New complaints e-filed into Minnesota's e-filing system sit in an electronic database where they are withheld from public view, often for days, while they await manual processing by court staff.

10. Without Defendants' no-access-before-processing policy, there would be no restriction and no delay. The restriction is unnecessary, as demonstrated by the practice of federal and state courts across the country, including this Court, that provide access to new complaints on receipt and before processing. Defendants are capable of providing such access but have chosen not to.

3

11. Courthouse News brings this action to address constitutional wrongs, to challenge the legality of Defendants' policies and practices in the Hennepin County District Court and Ramsey County District Court, and to seek declaratory and injunctive relief prohibiting Defendants from enforcing their policies and practices that result in violations of Courthouse News' constitutional right of access to newly e-filed civil complaints in the Hennepin County District Court and Ramsey County District Court.

## JURISDICTION AND VENUE

12. Courthouse News' claims arise under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act, Title 42 U.S.C. § 1983, *et seq*. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 2201 (declaratory relief). Defendants are subject to personal jurisdiction in this District.

13. Venue is proper in this District under 28 U.S.C. § 1391(b), and in this Division, because the headquarters of the Minnesota Judicial Branch and the Hennepin County District Court and the Ramsey County District Court are located in this District, and because a substantial part of the events or omissions giving rise to Courthouse News' claims occurred in this District and in this Division. The First Amendment violations giving rise to this action took place throughout the state of Minnesota, at each of the Minnesota courts.

## PARTIES

14. Courthouse News is a nationwide news service founded almost 30 years ago out of a belief that a great deal of news about civil litigation went unreported by traditional news media, a trend that has only increased in the last decade. Courthouse News now employs approximately 240 people, most of them editors and reporters, covering state and federal trial and appellate courts in all 50 states in the United States.

15. Defendant Jeff Shorba is the Minnesota State Court Administrator and is named as a defendant herein in that official capacity. Defendant Shorba, in his official capacity as Administrator, is responsible for, among other things, the administration of the statewide e-filing and case management systems used by the Minnesota Courts and public access to court records through those systems, including through any systems licensed from or otherwise provided by third parties.

16. Defendant Heather Kendall is the Judicial District Administrator for the Second Judicial District, which consists of Ramsey County District Court, and is named as a defendant herein in that official capacity. Defendant Kendall in her official capacity, is responsible for, among other things, the administration of the statewide e-filing system as it pertains to the Second Judicial District, and public access to court records filed with the Second Judicial District.

17. Defendant Sara Gonsalves is the Judicial District Administrator for the Fourth Judicial District, which consists of Hennepin County District Court, and is named as a defendant herein in that official capacity. Defendant Gonsalves in her official capacity is responsible for, among other things, the administration of the statewide e-filing system as it pertains to the Fourth Judicial District, and public access to court records filed with the Fourth Judicial District.

18. Courthouse News is informed and believes that Defendants are responsible for providing access to new complaints filed in the Hennepin County District Court and the Ramsey County District Court. Acting in their official capacities, Defendants and those acting under their direction and supervision are directly involved with and/or responsible for the delays in access to new complaints experienced by Courthouse News and other members of the press, which acts reflect the official policies and practices of the Defendants' offices.

19. Defendants' actions, as alleged in this Complaint, are under the color of Minnesota law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

20. Defendants are sued in their official capacities only. Courthouse News seeks relief against Defendants as well as their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them or at their direction or under their control.

## FACTS

**A. Courthouse News Reports Daily News From Courts Throughout the Nation, Including Minnesota.**

21. Courthouse News offers its readers a variety of publications. Its *New Litigation Reports* contain original, staff-written summaries of significant new civil lawsuits, and are sent to subscribers via e-mail each evening.

22. Among Courthouse News' other publications are a monthly newsletter, the *Entertainment Law Digest*, and the *Daily Brief*, which covers published, nationwide appellate rulings, including all United States Supreme Court and federal circuit decisions and significant rulings from the federal district courts.

23. Courthouse News also publishes a freely available website, www.courthousenews.com, featuring news reports and commentary, which is read by roughly 30,000 people every weekday. The website functions much like a print daily newspaper, featuring staff-written articles from across the nation that are posted throughout each day and rotated on and off the page on a 24-hour news cycle. On July 17, 2023, for example, the news page carried staff-written stories about Secretary of State Anthony Blinken's campaign to confirm 38 stalled ambassador appointments, an EU offer of $268 million to Tunisia to slow emigration, the start of trial in Michael Cohen's action against the Trump Organization, a California Supreme Court ruling

in favor of physicians alleging anti-competitive conduct by Aetna, a steep decline in the number of North Atlantic right whales, a heat wave in the West, and Modelo's rise over Bud Light to become America's top-selling beer, among many other stories.

24. Courthouse News has been credited as the original source of reporting on various topics by a wide range of publications, including: *The Mercury News, ABA Journal*, ABC News, *The Atlantic*, *Austin American Statesman*, Black Christian News Network, *California Bar Journal*, CBS News, *The Christian Science Monitor*, The Daily Beast, *The Dallas Morning News*, Forbes, Fox News, *The Guardian*, The Hill, *Houston Chronicle*, The Huffington Post, *Long Island Press*, *Los Angeles Times*, *Mother Jones*, National Public Radio (NPR), NBC News, *New York Daily News*, *New York Magazine*, *The New York Times*, *The Orange County Register*, Politico, *Rolling Stone*, *Salt Lake City Tribune, San Antonio Express-News*, Slate, *The Telegraph* (UK), *The Wall Street Journal*, *The Washington Post*, *The Washington Times*, *Women's Health Policy Report*, United Press International (UPI), *USA Today*, *U.S. News and World Report*, and the YouTube news channel. American, Canadian, and New Zealand radio shows have also interviewed Courthouse News' reporters.

25. Courthouse News has been credited specifically by numerous Minnesota news agencies and media outlets on a wide range of stories, including bullet-proof backpacks for school children, a Montana city's suit against a local newspaper over the paper's record request, an action against Starbucks over the amount of ice in its coffee drinks, and many more. The media crediting Courthouse News include the *Star Tribune*, Minnesota Public Radio, *Pioneer Press*, and Minnesota TV stations affiliated with ABC, CBS, NBC, and Fox.

26. Courthouse News has more than 2,200 subscribers nationwide, including law firms, law schools, government offices, and news outlets such as: The Associated Press, *The Atlanta*

7

*Journal Constitution*, *The Boston Globe*, CNN, *The Dallas Morning News*, *Detroit Free Press*, International Consortium of Investigative Journalists, Fox Entertainment Group, *Honolulu Civil Beat*, *Las Vegas Review-Journal*, *Los Angeles Times*, North Jersey Media Group, *Pacific Coast Business Times*, *Portland Business Journal*, *St. Paul Business Journal*, *The Salt Lake Tribune*, *The San Jose Mercury News*, *San Antonio Express News*, *Tampa Bay Business Journal*, *The Wall Street Journal*, Variety, Walt Disney Company, and Warner Bros.

27. Courthouse News subscribers also include educational institutions, including Boston University, Columbia Journalism Investigations, MIT School of Management, Stanford University, University of Chicago, University of Maryland – College of Journalism, University of North Carolina at Chapel Hill, University of Virginia School of Law, and Drake University Law Library.

28. In Minnesota, Courthouse News covers general civil litigation, focusing on actions brought against business entities and public institutions. This reporting is included in the Minnesota Report sent to subscribers every weekday evening.

29. Courthouse News does not report on or seek to review the small number of new civil complaints that are statutorily confidential or otherwise not open to the public, or complaints that are accompanied by a motion to seal. Such complaints are screened away from press and public access by Defendants' e-filing software.

30. To prepare the Minnesota Report and identify new cases that may warrant a website article, Courthouse News reporters go to the Minnesota Court Records Online ("MCRO") website. However, civil complaints are not available via this platform—or by any other means—until after court staff have completed administrative processing.

31. Given the nature of the coverage in the *New Litigation Reports* and its other news publications, including its website, any delay in the ability of a reporter to obtain and review new complaints necessarily holds up Courthouse News' reporting of new controversies for subscribers and readers.

32. For the period January 1, 2023, to March 31, 2023, Courthouse News' tracking shows that Hennepin County District Court withheld roughly half of new civil complaints for one to three days, and sometimes longer. In like manner, Ramsey County District Court withheld nearly three quarters of new civil complaints for one to three days, and sometimes longer.

**B.    The First Amendment Right of Access Attaches to Civil Complaints When the Court Receives Them.**

33. A right of access grounded in the First Amendment applies to non-confidential civil complaints.

34. The analysis of a claim alleging a violation of the First Amendment right of access to court documents involves a two-step process. The first step is to determine whether, as a general matter, there is a First Amendment right of access to a particular court proceeding or document. If the answer to that question is "yes," the court proceeds to the second step, which is to determine if the restrictions on access to that court proceeding or document satisfy Constitutional scrutiny. *See, e.g.*, *Courthouse News Serv. v. Planet*, 947 F.3d at 581, 589-97 (9th Cir. 2020) ("*Planet III*") (discussing and applying two-step process established by *Press-Enterprise Co. v. Superior Ct.* ("*Press-Enterprise II*"), 478 U.S. 1 (1986)).

35. To answer the question posed by the first step of the analysis, courts in the Eighth Circuit generally apply the *Press-Enterprise II* "experience and logic" test. *Flynt v. Lombardi*, 885 F.3d 508, 512-13 (8th Cir. 2018); *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 792 (8th Cir. 2021) (discussing test to determine whether there is a First

9

Amendment right of access to a civil court filing). To meet this test, a party must establish "(1) a historical tradition of accessibility, and (2) a significant positive role for public access in the functioning of the judicial process in question." *Flynt*, 885 F.3d at 512-13 (citing *Press-Enterprise II* as "setting forth what is now commonly referred to as the 'experience and logic' test for First Amendment access to judicial records.").

36. "[T]he federal courts of appeal[] widely agree" that the First Amendment right of access to information reaches civil judicial proceedings and records, and "every circuit court to consider the issue has uniformly concluded that the right applies to both civil and criminal proceedings." *Planet III*, 947 F.3d. at 590 (citing *Dhiab v. Trump*, 852 F.3d 1087, 1099 (D.C. Cir. 2017) (Rogers, J., concurring in part and concurring in the judgment) (collecting cases)). This right of access applies specifically to civil complaints.

37. Applying the "experience and logic" test, courts across the nation have recognized the existence of a qualified First Amendment right of access that attaches to non-confidential civil complaints upon their receipt by a court. *See, e.g.*, *Planet III*, 947 F.3d at 591 ("Both sides before us agree that experience and logic support a public right of access to newly filed civil complaints"); *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 141 (2d Cir. 2016) ("Experience and logic both support access" to civil complaints); *Courthouse News Serv. v. New Mexico Admin. Off. of the Cts.*, 53 F.4th 1245, 1262 (10th Cir. 2022) ("[T]he First Amendment right of access attaches to complaints when the court receives them, regardless of the technical terms and clerical processes used by the court."); *Courthouse News Serv. v. Schaefer*, 440 F. Supp. 3d 532, 557-559 (E.D. Va. 2020) ("[T]he Court finds that the experience and logic test is satisfied and finds that the public and press enjoy a qualified First Amendment right of access to newly-filed civil complaint."); *Courthouse News Serv. v. Gabel*, 2021 WL 5416650, at *13 (D. Vt. Nov.

19, 2021) ("A qualified First Amendment right of access attaches when a complaint is electronically filed.").

38. "There is no dispute that, historically, courts have openly provided the press and general public with access to civil complaints." *Schaefer*, 440 F. Supp. 3d at 557; *accord Bernstein*, 814 F.3d at 141 ("Complaints have historically been publicly accessible by default . . . .").

39. A new complaint serves as the opening bell in a legal dispute. In recognition of the media's traditional role as a surrogate observer for the general public as to what is happening in the courts, it has been a long-standing tradition for courts to provide reporters—especially those who visit the courts daily—with access to new civil complaints upon receipt for filing and before administrative processing. This ensures that interested members of the public learn about new cases contemporaneously with their filing, while those cases are still newsworthy and likely to be the subject of public attention and discussion.

40. Historically, reporters covering the courts could review and report on newly-filed cases which generally occurred upon the court's receipt of a new complaint and before the clerk's office performed the additional administrative tasks that follow the receipt of a new complaint—a process that was traditionally called "docketing" but in recent years, especially as courts have moved to electronic case management systems and e-filing, has been referred to as "processing."

41. In addition to Minnesota, Courthouse News has also collected evidence showing that, in states where it covers the courts in person on a regular basis, there is a history of access to new civil actions upon receipt of the pleading regardless of whether court staff have completed clerical processing in every region of the United States—north (Michigan and Wisconsin), south (Alabama, Arkansas, Georgia, Louisiana, Tennessee, Texas, and Virginia), central (Colorado, Illinois, Nebraska, Ohio, Oklahoma, and Utah), east (Connecticut, New Jersey, New York,

Pennsylvania, and Vermont), and west (Alaska, Arizona, California, Hawaii, Nevada, Oregon, and Washington). This evidence "demonstrat[es] that there is a long history of courts making complaints available to the media and the public soon after they are received"—"rather than after it is 'processed'"—"regardless of whether such courts use paper filing or e-filing systems." *Courthouse News Serv. v. Planet*, 2016 WL 4157210, at *12-13 (C.D. Cal. May 26, 2016).

42.     "Logical considerations also support a presumption of public access." *Bernstein*, 814 F.3d at 141.

43.     The First Amendment right of access exists to enable free and informed discussion about governmental affairs, which includes ongoing judicial proceedings. Courthouse News facilitates those important discussions by covering courts on a daily basis and seeking timely access to newly filed civil actions in order to report on their contents.

44.     The filing of a lawsuit invokes the authority of the courts, and the American people have a First Amendment right to know that a plaintiff has invoked that power to resolve a dispute and achieve a personal end. The complaint is the basis for the dispute and plays a significant role throughout all phases of the litigation.

45.     Public access to the complaint allows the public to supervise the judicial process by allowing the public to know the parties to the dispute, the alleged facts, the issues for trial, and the relief sought. Public access to the complaint also allows the public to understand the activity of the courts, enhances the accountability of the court system, and informs the public of matters of public concern. When a complaint is withheld from the public, it leaves the public unaware that a claim has been levelled and that state power has been invoked.

### C. Delay in Access to New Civil Complaints Infringes Upon Courthouse News' First Amendment Rights.

46. Where the qualified First Amendment right of access attaches to a particular court process or document, as it does with new civil complaints, the right attaches upon the court's receipt of the document, and the press and public generally have a right of contemporaneous access. *See, e.g.*, *New Mexico Admin. Off. of the Cts.*, 53 F.4th at 1269 ("[A] necessary corollary of the right to access is a right to timely access."); *Planet III*, 947 F.3d at 588, 591 (holding the qualified right of access to newly filed civil actions attaches when the lawsuit is filed, *i.e.*, when it is received by the court); *Courthouse News Serv. v. Jackson*, 2009 WL 2163609, at *4 (S.D. Tex. July 20, 2009) ("In light of the values which the presumption of access endeavors to promote, a necessary corollary to the presumption is that once found to be appropriate, access should be immediate and contemporaneous."); *Courthouse News Serv. v. Tingling*, 2016 WL 8505086, at *1 (S.D.N.Y. Dec. 16, 2016).

47. Turning to the second analytical step of a claim alleging a violation of the First Amendment right of access, after the court determines the right of access attaches to a particular record or proceeding, a presumption of access arises that may be restricted only if "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 13-14; *accord Planet III*, 947 F.3d at 596; *Bernstein*, 814 F.3d at 144; *Schaefer*, 440 F. Supp. 3d at 559-60. Here, Defendants' policies are not essential to preserve higher values and are not narrowly tailored.

48. Since Minnesota's adoption of e-filing, access delays have become pervasive. Unlike most federal district courts and many state courts, Minnesota state courts do not make newly filed complaints available upon e-filing with the court. Instead, they effectively seal the complaints while they sit in a database, allowing access only after court staff have processed them

13

and placed them in the public docket. As a direct result, for the period of January 1, 2023, to March 31, 2023, Courthouse News' tracking shows that the Hennepin County District Court withheld roughly half of new civil complaints from the public for a period of between one and three days, at times longer. For the period of January 1, 2023, to March 31, 2023, Courthouse News' tracking shows that the Ramsey County District Court withheld roughly three quarters of new civil complaints from the public for a period of between one and three days, at times longer.

49. The delays in access experienced by Courthouse News at the Hennepin and Ramsey County District Courts, and throughout Minnesota state courts, are unnecessary and easily avoidable. Courts across the nation—including the U.S. District Court for Minnesota—provide the press and public timely access to new e-filed civil actions through means readily available to Defendants.

50. Historically, before e-filing, reporters covering the courts could review and report on newly filed, paper civil complaint on the day of filing by looking at them at the courthouse at any time during the day. As was the case at the Hennepin and Ramsey County District Courts, this access generally occurred via a bin or box available to the press, and often the public, right after they crossed the counter. Federal courts throughout the nation commonly kept a polished, wooden box on the intake counter where new complaints were placed right after they crossed the counter. In this Court, reporters requested newly filed complaints from a clerk who provided access to new paper complaints as soon as they crossed the counter.

51. Compared to the paper era, providing timely access in an e-filing court is even easier. An e-filed complaint is simply a .pdf document that can be downloaded and viewed. Nothing prevents a reporter from reviewing a new complaint before it is processed by a clerk, nothing prevents a clerk from processing a complaint at the very moment members of the press or

public are reading it, and nothing prevents a clerk from processing a complaint after review by the press or public, when the clerk's schedule permits.

52. Moreover, courts can automatically segregate confidential filings based on designations made by the filer in the e-filing interface. E-filers in Minnesota Courts are required to designate certain documents as confidential, non-public, or under seal prior to filing. *See* Minn. Gen. R. Prac. 14.06(a) ("[A] Registered User electronically filing a document that is not accessible to the public in whole or in part . . . is responsible for designating that document as confidential or sealed in the E-Filing System before transmitting it to the court. This designation is made in the E-Filing system . . . ."); *id.* 11.03(a) ("Every person filing non-public documents with the court in public case types is solely responsible for identifying and designating them as non-public."). As was the case in the paper world, access in e-filing courts is delayed only if courts withhold new civil actions until after court staff complete administrative processing. Because most courts do not complete these clerical tasks for all the day's new civil actions on the day of filing, the result of a no-access-before-process policy is to prevent the press from learning about a substantial percentage of new civil actions until at least the day after filing, at which point the information is old news and less likely to capture the public's attention.

53. Processing new complaints is not the problem. All e-filing courts must conduct some administrative processing of new complaints. Delays happen when a court withholds new complaints from the press and public until after processing is complete.

54. Courts that provide access as e-filed complaints are received, regardless of whether court staff have completed clerical processing, include nearly all federal district courts and state courts in Alabama, Arizona, California (nearly all e-filing courts, covering 85% of the state's population), Connecticut, Florida, Georgia (courts in Atlanta metropolitan area), Hawaii, Nevada

(in the state's biggest court in Las Vegas), New York, Texas (Austin), Utah, Vermont, and Washington (Tacoma). These courts provide this access in various ways, all of which are available to Defendants.

55. Courts, like those identified above, that do not withhold public access for processing allow new civil actions to be read and reported when they are received by the court—when the new action is still newsworthy and capable of commanding public attention—as reporters did in the Hennepin County District Court and Ramsey County District Court in the paper past.

56. Courthouse News has asked Defendants to change their policies and practices to allow for access to new complaints upon receipt, explaining that they could do so using technology readily available through Minnesota's e-filing provider, Tyler Technologies. Through letters dated August 30, 2022, Courthouse News asked Defendants to stop denying public access to new e-filed complaints until after they have been processed by court staff and informed Defendants of alternatives commonly used in e-filing courts across the country. *See* Ex. A, August 30, 2022 Letter to Jeff Shorba; Ex. B, August 30, 2022 Letter to Sara Gonsalves; Ex. C, August 30, 2022 Letter to Heather Kendall. Courthouse News sent a follow-up letter to Defendant Jeff Shorba on October 13, 2022. *See* Ex, D, October 13, 2022 Letter to Jeff Shorba. Defendants have not answered those letters. Defendants continue to withhold access to new e-filed complaints until after processing. As a result, Courthouse News continues to experience significant delays in gaining access to new civil complaints e-filed in the Hennepin County District Court and Ramsey County District Court.

**COUNT ONE – VIOLATION OF U.S. CONST. AMEND. I AND 42 U.S.C. § 1983**

57. Courthouse News incorporates the allegations of Paragraphs 1-56 herein.

58. Defendants' actions under color of state law, including without limitation their policies and practices of withholding newly filed, non-confidential civil complaints from press and public view until after administrative processing, and the resulting denial of timely access to new civil complaints upon receipt for filing, deprives Courthouse News, and by extension its subscribers, of their right of access to public court records secured by the First Amendment to the United States Constitution.

59. The qualified First Amendment right to access new civil complaints filed in the Hennepin County District Court and the Ramsey District Court arises the moment those complaints are filed, and access may be restricted only if the restriction is essential to preserve an overriding government interest and is narrowly tailored to serve that interest. For Defendants' policies and practices to survive *Press-Enterprise II*'s two-prong balancing test, Defendants "must demonstrate that (1) 'there is a "substantial probability" that [an overriding government interest] would be impaired by immediate access'; and (2) 'no reasonable alternatives exist to "adequately protect" that government interest.'" *New Mexico Admin. Off. of the Cts.*, 53 F.4th at 1270. Defendants cannot satisfy either prong of this test with respect to the policies and practices alleged in this Complaint.

60. Courthouse News has no adequate remedy at law to prevent or redress Defendants' unconstitutional actions, and will suffer irreparable harm as a result of Defendants' violation of its First Amendment rights. Courthouse News is therefore entitled to a declaratory judgment and a preliminary and permanent injunction to prevent further deprivation of the First Amendment rights guaranteed to it and its subscribers.

## PRAYER FOR RELIEF

WHEREFORE, Courthouse News prays for judgment against Defendants as follows:

1.  A declaratory judgment pursuant to 28 U.S.C. § 2201 declaring Defendants' policies and practices that knowingly affect delays in access to newly filed civil unlimited complaints, including, inter alia, their policy and practice of denying access to complaints until after administrative processing, are unconstitutional under the First and Fourteenth Amendments to the United States Constitution because these policies and practices constitute an effective denial of timely public access to new civil complaints, which are public court records to which the First Amendment right of access applies;

2.  A preliminary and permanent injunction against Defendants, including their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them, or at their direction or under their control, prohibiting them from continuing their policies and practices that deny Courthouse News timely access to new non-confidential civil complaints, including, inter alia, their policy and practice of denying access to complaints until after administrative processing;

3.  An award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

4.  All other relief the Court deems just and proper.

Date:  July 24, 2023                              Respectfully submitted,


By:  /s/ *Seth Leventhal*

Seth Leventhal (MN #0263357)
4406 W. 42nd Street
Edina, MN 55416
Tel. (612) 234-7349
Fax. (612) 437-4980
seth@leventhalpllc.com

Herbert R. Giorgio, Jr. (MO #58524)*
Andrea R. Butler (MO #74978)*
Aaron V. Yuratovich (MO #74916)*
BRYAN CAVE LEIGHTON PAISNER LLP
211 N. Broadway, Suite 3600
St. Louis, MO  63102
Tel. (314) 259-2000
Fax (314) 259-2020
herb.giorgio@bclplaw.com
andrea.butler@bclplaw.com
aaron.yuratovich@bclplaw.com

*admission pro hac vice pending*

*Attorneys for Plaintiff Courthouse News Service*

4886-1574-5905, v. 4